**STATE OF LOUISIANA, ex rel., William J. GUSTE, Jr., Attorney General**

v.

**James G. WATT, Secretary of United States Department of the Interior, et al.**

**Civ. A. No. 79–2965.**

United States District Court, E.D. Louisiana.

March 14, 1985.

Gary L. Keyser, Asst. Atty. Gen., Mary Ellen Leeper, Asst. Atty. Gen., Emmett C. Sole, Sp. Asst. Atty. Gen., Lake Charles, La., for plaintiff.

Charles W. Findlay, Michele A. Giusiana, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

Pending before this Court is defendants' Motion for Clarification and Reconsideration of Order of July 3, 1984. Oral argument was heard on August 22, 1984 at which time the Court took defendants' motion under submission. The Court has now considered all the memoranda submitted in this case and has carefully studied the Outer Continental Shelf Lands Act, 43 U.S.C. 1337(g)(1–4), and the opinion recently filed in *State of Texas v. Secretary of the Interior*, 580 F.Supp. 1197 (E.D.Tex.1984) [the "*Texas* case"], and, based on the record and the law, concludes that defendants' motion should be denied.

Defendants' motion seeks not only clarification but revision of paragraph numbers 1, 2 and 5 of this Court's Order dated June

29, 1984, and filed on July 3, 1984. The above-referenced paragraphs in question are as follows:

1. The Secretary of the Interior failed to comply with the information-sharing requirements outlined in 43 U.S.C. 1337(g)(1) and (2). See exhibits attached to Document No. 30, and the *Texas* case, at pp. 1203–1204.

2. Because of the Secretary's failure, and the failure of the Plaintiff and the Defendants to reach an agreement regarding the disposition of revenues, this Court has jurisdiction under 43 U.S.C. 1337(g)(4), commonly known as 8(g)(4), both to order the requisite disposition and to control deposits into and withdrawals from the escrow account in order to insure that the disposition is made properly and economically. See the *Texas* case, at p. 1199.

5. An additional criterion for the fair and equitable disposition of revenues mandated by 8(g)(4) is the "bonus enhancement" rule. According to this rule, the Court must "weigh any enhancement in the value of the federal tracts that has occurred because of prior State offshore leasing." See the *Texas* case, at pp. 1206, 1216–18. "Disenhancement," on the other hand, will not be considered. See the *Texas* case, at p. 1217 n. 80.

The defendants complain that the Order does not specifically set forth the information-sharing requirements which the Secretary has failed to comply with and that the Secretary cannot be expected to alter his conduct without a fuller explanation by the Court. Further, the federal government requests that the Court clarify paragraph 5 as to whether the Court's ruling addresses the state's claim of condemnation and that the reference to disenhancement be deleted, since disenhancement is a factual issue which is not before the Court. The Court will review each claim of the defendants separately. But first, the Court will briefly discuss the 1978 Amendments to the Outer Continental Shelf Lands Act (OCSLA) against which the defendants' conduct must be tested.

The 1978 Amendments to the Outer Continental Shelf Lands Act completely restructured federal-state roles related to the exploration and development of the outer Continental Shelf. See 43 U.S.C. 1337, entitled "Grant of leases by Secretary". Section 1337 provides a standard for distribution of lease revenue derived from federal tracts bordering state owned offshore lands. All coastal states own a certain portion of the land extending off their shores. In Louisiana's case, it owns the lands extending three miles off its coast. The 1978 amended version of 43 U.S.C. 1337(g) designated as a distinct three mile area federal offshore lands lying adjacent to the coastal states' offshore boundaries. This inner most three mile strip of federal offshore land is often referred to as the Section 8(g) zone, since 43 U.S.C. 1337(g) pertains directly to these federal offshore lands. See 43 U.S.C. 1337(g).

The 1978 Amendment provides both procedural and substantive guidelines for leasing tracts located in the 8(g) zone. Section 1337(g)'s guidelines are summarized below by the *Texas* court:

In brief, these provisions require the following: at the time the Secretary solicits nominations for lease bids [3] on tracts within the 8(g) zone, he must provide relevant geographical, geological and ecological information to the Governors of those coastal states which own offshore lands adjacent to the federal lands being nominated.[4] Moreover, the Secretary must offer the Governor of the relevant coastal state an opportunity to enter into an agreement concerning disposition of revenue generated by federal leasing of tracts in the 8(g) zone if they contain at least one oil or gas pool or field common to both federal and state lands. The Governor then has 90 days within which to decide whether to accept the offer. Even if no such agreement can be reached, the Secretary may lease the federal tracts. But, he must deposit in a separate treasury account all lease revenues attributable to tracts in the 8(g) zone which contain an oil or gas pool common to both federal and state sub-

merged lands. Thereafter, if the Secretary and Governor still are unable to agree upon the proper distribution of lease revenue, the matter may be submitted to a United States' district court for a determination of "the fair and equitable disposition of such revenues and any interest which has accrued and the proper rate of payments to be deposited in the treasuries of the Federal government and the coastal state." 43 U.S.C. § 1337(g)(4).

3. The first step in the federal OCS leasing process is the request for nominations, i.e. a request for expressions of interest 43 U.S.C. § 1344(f)(1) (Supp. III 1979). *See also* 43 C.F.R. Part 3300 (procedures involved in preparing for a lease sale).

4. 43 U.S.C. § 1337(g)(2).

*State of Texas v. Secretary of Interior,* 580 F.Supp. 1197, 1198 (E.D.Tex.1984).

The 1978 Amendments, emphasizing cooperation rather than confrontation,

... sharply curtailed the Secretary's previously, virtually unlimited discretion, and concomitantly provided for substantially increased participation by affected states.[27] The statutorily required five-year leasing program designating the size, timing, and location of leasing activity provides an illustration of the restructured federal-state roles. The Secretary *must* solicit recommendations from the Governor of any state which may be affected by the leasing program.[28] Moreover, he *must* accept such suggestions if "they provide for a reasonable balance between the national interest and the well-being of the citizens of the affected State." [29]

27. *See* 43 U.S.C. §§ 1334(a), 1344(c)(d), 1345, 1351(a)(f)(g), 1352(d); H.R.Rep. 590, *supra* note 15, at 102–03, 115, 119, 152–53.

28. 43 U.S.C. § 1344(c).

29. 43 U.S.C. § 1345.

580 F.Supp. at 1203.

In the case at bar, the Secretary has failed to adequately comply with Section 1337(g)'s information-sharing requirements

summarized above and explicitly spelled out in 43 U.S.C. 1337(g). For example, the Secretary failed to provide any geological or geophysical information to the Governor of Louisiana at the time the Secretary solicited nominations all in violation of Section 8(g)(1). *See also State of Louisiana v. James G. Watt, Et Al,* Civil Action No. 79–2463, Section "I", June 22, 1983 proceedings, p. 17. (hereinafter referred to as the June 1983 proceedings).

The first step in the federal Outer Continental Shelf Lands Act leasing process is the request for nominations. 43 U.S.C. 1344(f)(1); the *Texas* case, 580 F.Supp. 1198 n. 3 (1984). Moreover, the 1978 Amendments indicate as confirmed in footnote 3 of the *Texas* case that "The Call for Nomination" is the "trigger" for several mandatory actions to follow. However, it appears from the record that the Secretary issued a "Call for Information", instead of "The Call for Nomination", which is not authorized by the 1978 Amendments. Further, the Secretary is required to consult with the Governor of the coastal state where offshore leasing is taking place to determine whether any of the tracts contain common pools or fields. *See* Section 8(g)(2); *See also* June 1983 proceedings, p. 21. Here, it appears the Secretary failed to comply with Section 8(g)(2)'s requirements.

Moreover, Section 8(g) explicitly states that the Secretary "shall offer the Governor of such coastal state the opportunity to enter into an agreement concerning the disposition of revenues" where the selected tracts *may* contain one or more oil or gas pools or fields underlying both the federal and state lands. Again, the record seems to reflect that the Secretary failed to offer the Governor of Louisiana the opportunity to share in *all* the revenues derived from those tracts which may contain a common pool or field.

 As a result of the Secretary's failure to offer the Governor the opportunity to enter an agreement concerning the revenues generated from the possible common fields or pools, it is evident that this Court

has subject matter jurisdiction under Section 8(g)(4) as stated in paragraph 2 of its order. Section 8(g)(4) clearly states that if the Secretary and Governor of the coastal states cannot agree on the disposition of revenues attributable to oil and gas pools underlying both the outer Continental Shelf and the submerged lands subject to the jurisdiction of the coastal state in question, then a district court of the United States shall determine the fair and equitable disposition of such revenues and any interest which has accrued. It logically follows that if the parties cannot agree for *any reason* on the disposition of the revenues then the district court has jurisdiction. Here, there was no agreement between the Secretary and the Governor because there was never any offer made by the Secretary of the Interior to even allow the Governor the opportunity to agree or disagree as the case may have been. Thus, the Court has jurisdiction over this case and paragraph 2 of its order need not be clarified, deleted or changed. Nor does paragraph 1 of its order concerning Section 8(g)(1) and (2) need be clarified, changed or deleted as Section 8(g)(1) and (2) are very explicit in setting forth the procedure the Secretary is supposed to follow, at what point in the leasing process certain actions are required to be taken, what type of information is to be shared with the coastal state and at what point in the leasing process the information is to be supplied.

■ As to paragraph 5 of the Court's Order referring to the criterion for the fair and equitable disposition of revenues man-

dated by Section 8(g)(4), it is clear that the Court in exercising its discretion can determine what will be a fair and equitable disposition of the revenues based on any and all factors it deems relevant.[1] Thus, it logically follows that the Court also has the right to exclude those factors that it deems irrelevant to its determination. Here, the Court, in agreement with Judge Parker, deems that the factor, "disenhancement," is irrelevant to the determination of what is a fair and equitable disposition of revenues mandated by Section 8(g)(4). *See* the *Texas* case, 580 F.Supp. at 1217 n. 80 for a further discussion of "disenhancement".

■ As to the defendants' claim that the state's claim of condemnation is just a variation of "disenhancement," the Court finds that the term, condemnation, used in this action does not have the same meaning as "disenhancement".[2] The State of Louisiana does not contemplate the condemnation term to be used in its ordinary sense, [*See* Black's Law Dictionary 364 (rev. 4th ed. 1968)] but means by its usage all information obtained by the federal government as a result of the process of prior state leasing which benefited the federal leasing program.[3] However, under either its ordinary dictionary definition or its special interpretation so given by the State of Louisiana, it does not mean the same thing as "disenhancement" as used in the *Texas* case. Thus, paragraph 5 in the Court's July 3, 1984 Order does not address condemnation nor does disenhancement mean the same thing as the term condemnation as used by

1. The Outer Continental Shelf Lands Act does not list specific factors which the Court must use in its determination of what would be a fair and equitable disposition of the revenues in question.

2. In plaintiff's fifth supplemental and amended complaint, filed March 23, 1984 it suggested certain non-exclusive factors that the Court should consider in determining Louisiana's fair and equitable share of revenues generated by 8(g) leases of which the condemnation factor read as follows:

Paragraph 13.

. . . ;

(c) Condemnation of Louisiana's submerged lands which have yet to be offered for lease;

. . .

Thus, the defendants' assertion that the state's use of a "condemnation" as a claim is misplaced. "Condemnation" is used here by the state as a suggested factor that the Court should consider in determining the disposition of revenues, not as a claim.

3. Pursuant to a conversation with plaintiff's counsel, the Court was informed that the State of Louisiana intended its suggested factor, condemnation, to have this broad interpretation. Although the Court views "condemnation" to be a poor choice of words, the Court accepts the State's broad definition of condemnation.

the State of Louisiana in this action. This Court will not delete "disenhancement" as requested by the Secretary of the Interior nor will it insert "condemnation".[4]

CONCLUSION

The Court's July 3, 1984 Order is perfectly clear on its face that the Secretary has failed to comply with 43 U.S.C. 1337(g)(1) and (2), that this Court has jurisdiction under 43 U.S.C. 1337(g)(4) and that this Court can determine which factors are relevant to its determination of what shall be the fair and equitable disposition of the revenues in question. Further, the above examples of the Secretary's failures are just that—*EXAMPLES!* These examples along with an indepth reading of Section 8(g) and the *Texas* case should serve to sufficiently guide the Secretary's course of conduct in the future.

Accordingly, the defendants' Motion for Clarification and Reconsideration of Order of July 3, 1984 is hereby DENIED.

---

**4.** The Court, of course, has not made a complete determination of which factors it shall or shall not use to determine what will be a fair and equitable distribution of the revenues in question, but the Court reserves its right to exclude the "condemnation" factor from its list if the Court so finds that this factor is irrelevant to its determination.